Per Curiam :
This case was referred pursuant to Pule 45 to Paul H. McMurray, a trial commissioner of this court, with directions to make findings of fact and recommendations for conclusions of law. The commissioner has done so in a report filed February 8,1961. Exceptions to certain of the commissioner’s findings were taken by plaintiff, briefs were filed by both parties and the case was submitted to the court on oral argument by counsel. Since the court is in agreement with the findings and recommendations of the trial commissioner, as hereinafter set forth, it hereby adopts the same as the basis for its judgment in this case. Plaintiff is therefore not entitled to recover and his petition will be dismissed.
It is so ordered.
OPINION OE THE COMMISSIONER
Plaintiff, an individual who, during the period involved in this action, was trading as Capitol School of Typéwriter Mechanics, a school authorized to train veterans under programs administered by the Veterans Administration, is claiming additional compensation for the education and training of veterans pursuant to Public Law 346, 58 Stat. 284, and applicable regulations issued by the Veterans Administration (hereafter referred to as VA).
Although this is a trial de novo, it should be pointed out that plaintiff’s claim was previously given two reviews at the administrative level, the first before a Hearing Examiner and the second before the Veterans’ Education Appeals Board, on which occasions both plaintiff and defendant were represented by counsel. Much testimony was taken and briefs prepared for consideration by the administrative agency before the final administrative determination was *596 made. Based upon a careful analysis of the evidence before the Veterans’ Education Appeals Board and the conclusion reached by that agency and other evidence introduced in this cause, it is my opinion that the Board’s findings were correct.
I shall deal with the agreed issues in the case in the order set out in the Pretrial Memorandum of the Trial Commissioner under date of April 25,1960.
I
Was the VA Obligated to Pay for Tuition or Other Expenses of Trainmg Veterans Who Enrolled m the Course, Took a Certai/n Amount of Training, and Left the School Before the VA Actually Issued a Certificate of Eligibility.
When the plaintiff’s school entered into an agreement to train a veteran without first having determined that the veteran was eligible to receive the training at the expense of the VA, such veteran was required to sign a contract with the plaintiff whereby the veteran agreed in effect that he (the student) was obligated to pay all of the costs of his training if they were not paid for by the VA. The following language was used:
I am a Veteran, entitled to educational Training under the “GI” Bill and agree to execute all necessary forms to secure payment of all charges by the Government. Until such liability is accepted by the Government, I understand and agree that I am personally responsible in full for all tuition and other charges (not to exceed $500.00) and in the event of rejection by the Government, I agree to comply with one of the above three plans immediately.
The last sentence in the quotation referred to the methods of paying the tuition.
Included in the “Financial Regulations” on the reverse side of the registration form was a paragraph numbered 8, which provided as follows:
Courses are planned for a specific number of students and so budgeted by the Institution. Accordingly, after a course is commenced, all Fees must be paid as agreed and no refunds can be made.
*597 The plaintiff’s school also required that a deposit of $10 be made by each student who registered for a course of training, and this fee was in addition to the tuition charge of $500 per student for the course offered, namely, Typewriter Repairman Course. There was an additional charge of $5 required of those students who paid the tuition in installments. Plaintiff has not established entitlement to any compensation under this issue either by records and documents submitted or through oral testimony.[1]
II
Were the Bates Paid by the VA in Contracts VA-lUr-vr-llfl, V30WV-lJp, and with Supplements Thereto., Fair and Reasonable.[2]
Plaintiff has insisted that the rates paid of $.5175 and $.361 should have been $.56 and approximately $.52, respectively, per student hour.
With respect to this second issue, namely, the matter of fair and reasonable rate of tuition under the two contracts in suit, it is found that the rate paid for the first period, July 1,1948, through August 31,1949, of $.5175 per student hour, was fair and reasonable on the basis of the record presented. The rate for the final period of the school’s operation, from September 1, 1949, to September 30, 1950, was much lower, namely, $.361 per student hour. However, plaintiff had reluctantly accepted that rate in a negotiated contract, and it became the customary rate for this final period involved in the suit.
III

Was There an Established or Customary Bate of $.5175 in Existence at the Time the Bate Was Reduced to $.361.

No customary rate of tuition was established pursuant to the requirements of Public Law 266, 63 Stat. 631, by reason of the existence of two contracts covering a period of only *598 14 months. Accordingly, the last contract in a series of contracts covering a period of 24 months or more was the one which allowed a tuition rate of only $.361 per student hour (contract Y3012Y-214). This conclusion is in line with the findings made in two prior decisions of this court: National School of Aeronautics, Inc. v. United States, 135 Ct. Cl. 343; Germain School of Photography, Inc. v. United States, 150 Ct. Cl. 841.
IY

Did the VA Become the Guarantor T>y Statute (Public Laws 3I¡£ and 16) for Cost of Veteran Training Toy Asswtning the Written Contractual Relationship Existing Between the Veteran Students and Plaintiffs School at the Time the Training of Such Veterans Was Taken Over by the VA.

On the record presented there can be but one answer to this issue, namely, the VA did not become a guarantor by statute (Public Laws 346 or 16) for all the costs incurred by plaintiff’s school in training veterans. There were some very important conditions and requirements which had to be met by or on behalf of each student before the YA became obligated for his training costs. First, eligibility to receive such training had to be established by compliance with the law and applicable regulations. Second, an agreement or binding contract had to exist between the school and the VA before there could be a proper assumption of the costs of training involved. The extent of the costs assumed is limited to those which have a legal basis, i.e., customary rate established pursuant to law, charges which have been agreed upon between the school and the YA, or charges found by the VA under appropriate circumstances to be fair and reasonable in cases where no contract exists.
Plaintiff has failed to prove entitlement to recover any amount under any of the issues presented. This conclusion is supported by the findings of fact made herein on the basis of the record. The petition, accordingly, should be dismissed.
FINDINGS OF FACT
1. Plaintiff is an individual who, during the period involved in this action, was trading as Capitol School of Type *599 writer Mediamos, a school authorized to tram veterans in its Typewriter Eepairman Course, pursuant to programs administered by the YA under Public Law 16, 78th Congress, which is applicable to disabled veterans, and under Public Law 846, 78th Congress, applicable to nondisabled veterans.
2. Plaintiff has brought this action for additional tuition payments, claiming the school was entitled to a higher tuition rate than that established by the YA in contract V3012V-214 and Supplement No. 1 to that contract covering the period September 1, 1949, through September 80, 1950. Plaintiff also makes claim for payments for certain veterans for whom no certificates of elgibility were issued by the YA.
3. At a pretrial conference plainti ffsubmitted certain documents in evidence and rested its case without offering any oral testimony. The defendant thereupon filed a motion to dismiss pursuant to Rule 49(c) on the ground that, upon the facts and law, the plaintiff had not shown a right to recover. By Memorandum Order filed August 8, 1960, the Commissioner decided that defendant’s motion should be allowed and the petition dismissed under the rule. It was agreed that the issues in this litigation are as follows:
1. Was the YA obligated to pay for tuition or other expenses of training veterans who enrolled in the course, took a certain amount of training, and left the school before the VA actually issued a certificate of eligibility.
2. Were' the rates paid by the YA in contracts VA-12r-vr-147, V3012Y-14, and V3012V-214, with supplements thereto, fair and reasonable.
3. Was there an established or customary rate of $.5175 in existence at the time the rate was reduced to $.361.
4. Did the VA become the guarantor by statute (Public Laws 346 and 16) for cost of veteran training by assuming the written contractual relationship existing between the veteran students and plaintiff’s school at the time the training of such veterans was taken over by the YA.
4. Based upon the record before the Veterans’ Education Appeals Board which is now in evidence in this suit, the plaintiff’s school received payments for its services from the VA as follows:
*600 PX. 16
Veterans: Tuition Contract Period covered per hour
VA12r-vr-147_1/15/47 — 1/14/48_$.50
Renewal #1_1/15/48 — 1/14/49_ . 50
Supplement #1_ 3/3/48 —1/14/49_ . 5175
Supplement #2_ 7/1/48 —1/14/49_ . 5175
Renewal #2_1/15/49 — 8/31/49_ . 5175
PX. 346
Veterans:
Training of these veterans during the period from August 5, 1947, through June 30, 1948, was paid for at the rate of $.50 per hour, as set forth in VA Form RV 7-215, “Oharge Data of Institutions Not Under Contract with Veterans Administration.”

Tuition Contract Period covered per hour

V3012V-14_ 7/1/48 — 6/30/49_$. 50
Supplement #1_ 9/20/48 — 6/30/49_ .5175
Supplement #2_ 10/11/48 — 6/30/49_ . 5175
Supplement #3_ 9/20/48 — 6/30/49_ .5175
Renewal #1_ 7/1/49 — 8/31/49_ .5175
V3012V-214_ 9/1/49 — 9/30/50_ .361
Supplement #1_ 5/8/50 — 9/30/50_ .361
5. The VA Form RV 7-215, captioned “Charge Data of Institutions Not Under Contract with Veterans Administration,” mentioned in finding 4, indicates that it was submitted by the Capitol School of Typewriter Mechanics to the Manager, VA Eegional Office, Washington, D.C., attention Training Facilities Section. It contains information supplied by the applicant in eight columns, headed, respectively, “Name of Course; Lowest Cash Tuition Price; Total Fees; Cost of Books, Equip., Supplies; Refund Policy; Length of Course; Clock Hrs. Per Week Required; Weeks, Months or Semester Hrs. Required.” The instructions for the use of form RV 7-215 were issued on June 17, 1947, by the VA in Technical Bulletin RV 7-19. Prior to the issuance of the regulation known as “Change 4 to VA Manual 7-5,” 38 C.F.R. 21.570 (1949 ed.), written contracts for students under Public Law 346 were not required; schools were paid their customary cost of tuition as shown in their catalogs, brochures, and other information furnished the VA by the schools. The purpose of form RV 7-215 was to enable the school to furnish the Veterans Administration with information as to its customary cost of tuition, *601 the charges customarily made for books and supplies, and other data which would enable the Finance Department of the Veterans Administration to make the required payments to the school. The forms were not contracts and were never intended to be contracts or contractual obligations.[3]
6. Pursuant to VA regulation, Change 4, supra, effective July 1, 1948, the VA was required to fix fair and reasonable rates for all schools established after June 1944 based upon the school’s cost of operations. As a basis for the negotiation of a contract for the period September 1, 1949, to September 30, 1950, plaintiff filed a schedule of its cost of operations for the preceding period. The VA fixed the rate of $.361 per student hour, which was embodied in contract V3012V-214.
7. Plaintiff was dissatisfied with the rate fixed by the VA in contract V3012V-214 and, on September 5,1950, appealed to the Veterans’ Education Appeals Board on two issues: (1) Did the school have a customary cost of tuition and (2) Was the rate fixed in contract V3012V-214 fair and reasonable.
A hearing was held before an Examiner of the Veterans’ Education Appeals Board between May 23,1951, and June 1, 1951. At that hearing the plaintiff withdrew the issue as to the reasonableness of the rate of contract V3012V-214, leaving for consideration only the issue as to whether or not the school had a customary cost of tuition. Plaintiff contended that the school had established a customary cost of tuition in contract V3012V-14, which, with supplements, had been executed for the period July 1, 1948, through August 31,1949. Plaintiff further insisted that the final rate of that contract, $.5175 per student hour, should have been incorporated in contract V3012V-214, pursuant to Public Law 266, 81st Congress, which provides, in part, as follows:
In any case in which one or more contracts providing a rate or rates of tuition have been executed tor two successive years, the rate established by the most recent contract shall be considered to be the customary cost of tuition * * *.
The plaintiff’s contentions were substantially as follows:
(a) VA Form BV 7-215 constitutes a contract within the meaning of Public Law 266.
*602 (b) The contracts between the school and. the VA for the training of veterans under Public Law 16 constitute contracts within the meaning of Public Law 266 for the purpose of establishing customary or frozen tuition rates.
(c) Contract V3012V-14, as supplemented, which covered a period of 14 months, is adequate to fulfill the requirement contained in Public Law 266 with respect to contracts “executed for two successive years.”
8. The Veterans’ Education Appeals Board found:
(a) VA Form RV7-215 does not constitute a contract within the meaning of Public Law 266, since it is merely designed to give certain cost data to enable the VA to make payments authorized or permitted by statute when no contract is involved.
(b) Contracts for the training of veterans under Public Law 16 may not be included in a sequence of contracts for the establishment of a customary cost of tuition under Public Law 266.
(c) A sequence of contracts covering a period of 14 months is insufficient to establish a customary cost of tuition under Public Law 266, and contracts for two full calendar years are necessary for such purposes.
9. Plaintiff has failed to establish by competent evidence his contention that the rate of $.361 fixed by the VA in contract V3012V-214 was not fair and reasonable. The action of the VA in fixing this rate, on the basis that it was the customary rate, was correct.
10. Plaintiff has failed to produce any competent proof that the rates embodied in contracts VAl2r-vr-147 and V3012V-14 were not the proper and authorized rates.
11. Plaintiff has not offered any evidence which warrants a finding that the school was not paid for all instruction given veterans properly enrolled under the applicable laws and regulations promulgated by the VA.
CONCLUSION OK LAW
Upon the foregoing findings of fact, which are made a part of the judgment herein, the Court concludes as a matter of law that plaintiff is not entitled to recover, and the petition is therefore dismissed.

 No -witnesses were called for oral testimony during the trial of this action. The VA required the school to return the deposit of $10 in each instance before accepting Touchers for tuition for training of veterans.

 Contract V12r-vr-147 relates to Public Law 16 veterans. Payments at a tuition rate of $.50 per hour were made during the period from August 5, 1947, to June 30, 1948, on basis of charge data of a school not under contract with the VA.

 National School of Aeronautics, Inc. v. United States, 13S Ct. Cl. 343.